=================================================================
This opinion is uncorrected and subject to revision before
publication in the New York Reports.
-----------------------------------------------------------------
No. 18
The People &c.,
            Respondent,
        v.
Marcus D. Hogan,
            Appellant.


            Shirley A. Gorman, for appellant.
            Robert J. Shoemaker, for respondent.


STEIN, J.:

        Under the circumstances of this case, we conclude that
the drug factory presumption of Penal Law § 220.25 was properly
considered by the factfinder.  In addition, defendant argues that
the decision regarding whether to testify before the grand jury
is fundamental and, therefore, reserved to defendants, rather

- 1 -

than a matter of strategy that rests with defense counsel.  We
reject that argument and hold that the decision is a strategic
one, requiring the expert judgment of counsel.  Thus, we adhere
to our prior decisions establishing that the refusal to timely
facilitate defendant's appearance before the grand jury does not,
per se, amount to ineffective assistance of counsel.

Defendant was arrested on felony drug possession
charges after police executing a search warrant at his former
girlfriend's apartment observed him running to the bathroom from
the kitchen, where packaged and loose cocaine, baggies, and a
razor blade were found in open view directly across from the
entrance door.  At approximately 4:00 p.m. on the Friday before a
long holiday weekend, the People sent notice to defense counsel,
by fax, indicating that the case would be presented to a grand
jury on the next business day, a Tuesday, at 1:45 p.m.  Defense
counsel had already left the office and did not receive the
notice until Tuesday morning.  He then contacted the district
attorney's office and indicated that he would not have defendant
testify because he "didn't see the benefit to it, only the harm."
It is undisputed that counsel did not speak with defendant about
testifying before the grand jury, which ultimately voted to
indict defendant, charging him with, among other things, criminal
possession of a controlled substance in the third and fifth
degrees.  Defendant later moved to dismiss the indictment on the
ground that he was denied an opportunity to testify before the

grand jury due to insufficient notice.  Supreme Court denied the motion as untimely.

At the ensuing nonjury trial, police officers testified that, upon entering the apartment, they found six "dime bags" of packaged crack cocaine and 50 unused baggies in plain view on the kitchen counter.  There was also testimony that the baggies were of the sort that "are commonly used for the unlawful packaging, sale and distribution of illegal narcotics such as crack cocaine" -- i.e., sale-related items associated with the drug trade.  They also found loose cocaine and a razor blade on the floor, a few feet in front of the counter.  One of the officers testified that defendant was initially observed "a couple of feet" away from the cocaine.  Defendant's former girlfriend, who pleaded guilty to attempted criminal possession of a controlled substance in the third degree, testified that she had purchased the cocaine and was "in the process of moving it" when the police arrived, but it "flew everywhere" out of her hands when she heard the police banging on the door.  She admitted that the cocaine -- including the loose cocaine that had been in her hands -- and the unused baggies were in plain view when the police entered.  She further testified that she was not sure what she was going to do with the drugs, but acknowledged that she would "[p]robably sell some."

Defendant was convicted of criminal possession of a controlled substance in the third and fifth degrees.  In handing down its verdict, the court indicated that there was insufficient

proof under a constructive possession theory without the presumption set forth in Penal Law § 220.25 (2), commonly known as the drug factory presumption. Defendant was sentenced, as a second felony offender, to an aggregate term of nine years in prison, to be followed by three years of postrelease supervision. His subsequent motion to set aside the verdict was denied.

Upon defendant's appeal, the Appellate Division unanimously affirmed, rejecting his arguments that the drug factory presumption did not apply and that he was denied the effective assistance of counsel (118 AD3d 1263, 1263-1264 [4th Dept 2014]). A Judge of this Court granted defendant leave to appeal (24 NY3d 1219 [2014]).

II.

Initially, we reject defendant's argument that the drug factory presumption contained in Penal Law § 220.25 (2) was inapplicable because, he maintains, there was evidence only of possession with intent to sell, but no evidence of intent to package or otherwise prepare drugs for sale. As relevant here, section 220.25 (2) provides:

> "The presence of a narcotic drug . . . in open view in a room, other than a public place, <u>under circumstances evincing an intent to unlawfully</u> mix, compound, <u>package or otherwise prepare for sale</u> such controlled substance is presumptive evidence of knowing possession thereof by each and every person in close proximity to such controlled substance at the time such controlled substance was found" (emphasis added).

This Court recently addressed this provision in <u>People v Kims</u>,

explaining that the statute allows the court to charge the fact-finder "with a permissible presumption, under which the fact-finder may assume the requisite criminal possession simply because the defendant, while not in actual physical possession, is within a proximate degree of closeness to drugs found in plain view, under circumstances that evince the existence of a drug sale operation" (24 NY3d 422, 432 [2014]).

The intention of Penal Law § 220.25 (2) is "to allow police in the field to identify potentially culpable individuals involved in a drug business, under circumstances that demonstrate those individuals' participation in a drug operation" (id. at 432-433, citing Mem of St Commn of Investigation, Bill Jacket, L 1971, ch 1044). That is, "the presumption was intended to address the issue of proof of knowing possession by those who were supervising or participating in the preparation of drugs for resale but who did not have personal physical possession of the drugs when the police lawfully entered the premises[;] . . . a 'dealership quantity' of the drug is not a requirement," however (William C. Donnino, Practice Commentaries, McKinney's Cons Laws of NY, Book 39, Penal Law § 220.25 [emphasis added]). In accordance with the statutory purpose -- and as is evident from the language of the statute -- "a specific intent on the part of the defendant to 'unlawfully mix, compound, package or otherwise prepare for sale' a controlled substance [need not] be shown[;] [a]ll that is required is that the 'circumstances evinc[e]' such

an intent" (<u>People v Nelson</u>, 147 AD2d 774, 776 [3d Dept 1989], <u>lv</u> <u>denied</u> 74 NY2d 794 [1989], quoting Penal Law § 220.25 [2]).

This Court has found circumstances present evincing the existence of a drug factory for purposes of the presumption where cocaine was found in a bathrobe that was under a pile of clothes, along with, "in plain view, . . . recognized adulterants and drug paraphernalia" (<u>People v Tirado</u>, 47 AD2d 193, 195-196 [1st Dept 1975], <u>affd on op below</u> 38 NY2d 955 [1976]).  Similarly, we concluded that the presumption was properly applied where an "apartment contain[ed] a large cache of drugs, money and weapons in plain view" (<u>People v Bundy</u>, 90 NY2d 918, 920 [1997]), as well as where police found a small residue of cocaine on a dish, grains of rice on the floor, a plastic bag containing over one-half ounce of cocaine in a closed drawer, and 10 ounces of cocaine hidden in a bag of rice in a refrigerator (<u>see</u> <u>People v</u> <u>Tejeda</u>, 73 NY2d 958, 960 [1989]).  In contrast, there was insufficient evidence to charge the presumption where, upon entering an apartment in which an undercover officer had recently made a controlled buy, police found only "a tinfoil packet of cocaine on the floor in the four-to-five-inch space between a couch and the wall," as well as a large amount of cash (<u>People v</u> <u>Martinez</u>, 83 NY2d 26, 30, 34 n 3 [1993], <u>cert</u> <u>denied</u> 511 US 1137 [1994]).

Under the circumstances here, the court properly granted the People's request that it consider the presumption.

Defendant's former girlfriend admitted that the bagged crack, loose cocaine and baggies were in plain view, and that she was in the process of "moving" the cocaine that she was "[p]robably" going to sell.[1]  The police further testified that defendant was found in close proximity to the cocaine and that the drugs, baggies and razor blade were in open view.  Despite the fact that the loose cocaine was in the carpet -- where it fell from the former girlfriend's hands when she was startled by the police battering ram -- it was in the open and not concealed by any furniture or other object (cf. Martinez, 83 NY2d at 36-37). While there was not a vast quantity of cocaine found, the evidence presented at trial supported an inference of more than mere intent to use or sell.  Specifically, the evidence of packaged and loose drugs, paraphernalia and a razor blade in plain view was sufficient to establish that drugs were being "package[d] or otherwise prepare[d] for sale" in the apartment, permitting the conclusion that defendant, who was in close proximity to the drugs, knowingly possessed them (Penal Law § 220.25 [2]; see People v Elhadi, 304 AD2d 982, 982-984 [3d Dept 2003], lv denied 100 NY2d 580 [2003]; People v Jiminez, 292 AD2d 196, 197 [1st Dept 2002], lv denied 98 NY2d 698 [2002]; People v James, 266 AD2d 236 [2d Dept 1999]; People v Westbrook, 177 AD2d

_____

[1] Contrary to the dissent's contention, the former girlfriend's indecisiveness over "possibly" consuming some of the drugs, herself, does not defeat the sufficiency of the evidence in support of charging the presumption.

1039 [4th Dept 1991], lv denied 79 NY2d 866 [1992]).

### III.

Defendant's claim that he was deprived of the effective assistance of counsel is also meritless. Specifically, defendant faults his counsel for both deciding that defendant would not testify before the grand jury without consulting him and failing to timely move to dismiss the indictment for insufficient notice of the grand jury proceeding. A defendant advancing an ineffective assistance claim must "demonstrate the absence of strategic or other legitimate explanations for counsel's alleged shortcomings" (People v Benevento, 91 NY2d 708, 712 [1998] [internal quotation marks and citation omitted]), and defendant cannot do so here because counsel stated "his thinking in plain language on the record" (People v Nesbitt, 20 NY3d 1080, 1082 [2013]) regarding why, as a matter of strategy, he decided that defendant would not testify before the grand jury. In an attempt to overcome this hurdle, defendant argues that counsel had no authority to decide whether he would testify before the grand jury because that choice is fundamental and, therefore, reserved exclusively for defendants. We disagree.

"It is well established that a defendant, having accepted the assistance of counsel, retains authority only over certain fundamental decisions regarding the case" (People v Colon, 90 NY2d 824, 825 [1997] [internal quotation marks and citation omitted]; see People v Colville, 20 NY3d 20, 28 [2012];

People v Ferguson, 67 NY2d 383, 390 [1986]).  Fundamental decisions belonging to a defendant are those "such as whether to plead guilty, waive a jury trial, testify in his or her own behalf or take an appeal" (Colon, 90 NY2d at 825-826 [internal quotation marks and citation omitted]).  In contrast, strategic decisions regarding the conduct of trial, which remain in the purview of counsel, include those such as whether to seek a jury charge on lesser-included offenses (see Colville, 20 NY3d at 32), the selection of particular jurors (see Colon, 90 NY2d at 826), and whether to consent to a mistrial (see Ferguson, 67 NY2d at 390).  If defense counsel solely defers to a defendant, without exercising his or her professional judgment, on a decision that is "for the attorney, not the accused, to make" because it is not fundamental, the defendant is deprived of "the expert judgment of counsel to which the Sixth Amendment entitles him" or her (Colville, 20 NY3d at 32).

While the right to testify before a grand jury is significant and "must be scrupulously protected" (People v Brumfield, 24 NY3d 1126, 1128 [2015] [internal quotation marks and citations omitted]), "a prospective defendant has no constitutional right to testify before the [g]rand [j]ury" (People v Smith, 87 NY2d 715, 719 [1996] [emphasis added]).  In contrast to the "constitutional nature of the right to testify at trial" (id. at 720), the right to testify before the grand jury is a limited statutory right (see CPL 190.50 [5]; Smith, 87 NY2d

at 719).  Whether to exercise that right is a decision that requires "the expert judgment of counsel" (Colville, 20 NY3d at 32) because it "involves weighing the possibility of a dismissal, which, in counsel's judgment may be remote, against the potential disadvantages of providing the prosecution with discovery and impeachment material, making damaging admissions, and prematurely narrowing the scope of possible defenses" -- quintessential matters of strategy (People v Brown, 116 AD3d 568, 569 [1st Dept 2014], lv denied 24 NY3d 1001 [2014]).  The various risks and benefits that must be considered render the decision of whether to exercise this statutory right "an appropriate one for the lawyer, not the client" (Ferguson, 67 NY2d at 390; see Brown, 116 AD3d at 569; People v Lasher, 74 AD3d 1474, 1476 [3d Dept 2010], lv denied 15 NY3d 894 [2010]).

In any event, this Court has repeatedly and consistently held that -- even when it is due to attorney error -- a "defense counsel's failure to timely facilitate defendant's intention to testify before the [g]rand [j]ury does not, per se, amount to a denial of effective assistance of counsel" (People v Wiggins, 89 NY2d 872, 873 [1996]; see People v Simmons, 10 NY3d 946, 949 [2008]; People v Helm, 51 NY2d 853, 854-855 [1980]).  That is, even where no strategy is involved, a defendant must show prejudice -- for example, that if he or she "had . . . testified in the grand jury, the outcome would have been different" -- in order to succeed on an ineffective assistance of

counsel claim in this regard (Simmons, 10 NY3d at 949).[2]  We see no reason to overrule our long-standing precedent in this regard. Here, defendant's claim that the result would have been different if he and his former girlfriend had testified before the grand jury is not convincing.  Indeed, they did testify at trial and he was nevertheless found guilty.

In short, the decision of whether to have a defendant testify before a grand jury is a strategic decision within counsel's authority to make.  Here, counsel stated his strategy on the record and, even if counsel had not done so, defendant has shown no prejudice.  Therefore, while the better practice may be for counsel to consult with his or her client, defendant cannot establish ineffective assistance of counsel based on counsel's decision that defendant would not testify before the grand jury. Regarding the untimely motion for dismissal of the indictment

---

[2] As noted by one court, our holdings that a defendant must show prejudice in order to prevail on an ineffective assistance of counsel claim when he or she has lost the right to testify before the grand jury based upon an attorney's calendaring mistake (see People v Simmons, 10 NY3d 946, 949 [2008]; People v Wiggins, 89 NY2d 872, 873 [1996]) "strongly support[] the conclusion that . . . [the] strategic and tactical decision[] [of] testifying before the grand jury . . . [is] deemed to repose" in defense counsel (People v Lasher, 74 AD3d 1474, 1476 [3d Dept 2010], lv denied 15 NY3d 894 [2010] [internal quotation marks and citation omitted]; see also Peter Preiser, Practice Commentaries, McKinney's Cons Laws of NY, Book 11A, Criminal Procedure Law § 190.50 [noting the general rule that the target of a grand jury investigation is not entitled to notice of the proceeding against him or her and that federal defendants have no right to testify before a grand jury]).

based upon inadequate notice, we need only note that ineffective assistance is not established by a defendant's allegations that counsel failed to make a meritless motion (see People v Stultz, 2 NY3d 277, 287 [2004]).

Accordingly, the order of the Appellate Division should be affirmed.

People v Marcus D. Hogan

No. 18

RIVERA, J.(dissenting):

The statutory presumption contained in Penal law §
220.25 (2) was appropriately dubbed the "drug factory
presumption," because it "was intended to allow police in the
field to identify potentially culpable individuals involved in a
drug business, under circumstances that demonstrate those
individuals' participation in a drug operation" (People v Kims,
24 NY3d 422, 433 [2014] citing Mem. of St. Comm'n of
Investigation, Bill Jacket, L. 1971, ch. 1044).  Recognizing the
"fairly common situation" where "the occupants of such
'factories' who moments before were diluting or packaging the
drugs, usually proclaim their innocence and disclaim ownership
of, or any connection with, the materials spread before them"
(id. citing Mem. of St. Comm'n of Investigation, Bill Jacket, L.
1971, ch. 1044 at 4), "the drafters of the statute also sought to
address the difficulty of prosecuting persons other than the
owner or lessee of the premises," by equating an individual's
close proximity to drugs in a drug sale operation with that
person's actual possession of a controlled substance (id.).
Nevertheless, the majority ignores the intention of Penal Law §
220.25 (2) and construes the statute broadly to apply where the

- 1 -

evidence of a drug business is tenuous and defendant's
participation in a drug sale operation is lacking.

"We have long recognized that statutory presumptions
are without validity unless the probabilities based on experience
and proof justify them" (Kims, 24 NY3d at 435 [internal
quotations and citations omitted].  Where facts "lead to a
conclusion counterintuitive to the probabilities to be drawn from
common experience, the [drug factory] presumption has no place"
(id. [internal quotations and citations omitted]).  According to
the statute, the presumption applies if there exist
"circumstances evincing an intent to unlawfully mix, compound,
package or otherwise prepare that substance for sale" (Penal Law
§ 220.25 [2]).  Those circumstances are lacking here.

When the police entered the apartment they failed to
discover sale-related items associated with the drug trade.
Unlike other cases where the drug factory presumption has been
applied, here, for example, there were no guns or other weapons,
no cache of money, no drug mixing agents, and no scale to weigh
drugs for packaging, typical of a drug sale enterprise (see
People v Faulk, 126 AD3d 564, 564 [1st Dept 2014] lv denied 25
NY3d 1071 [2015] [drug factory presumption applied where
defendant had close proximity to "cocaine, crack pipes and a
scale with cocaine residue"];  People v Hyde, 302 AD2d 101, 103
[1st Dept 2003] lv denied 99 NY2d 655 [2003] [drug factory
presumption applied where there were drugs, drug paraphernalia

and "a loaded gun in an open bag"]; People v Bundy, 235 AD2d 334, 337 [1st Dept 1997] affd, 90 NY2d 918 [1997][drug factory presumption applied where defendant was in close proximity to a "loaded Glock gun, the 20 clear bags containing 1,968 crack-filled vials, the brown bag containing a rock of crack and 59 vials with crack in them, the plastic bags containing empty vials and vial tops, and a scale used to weigh narcotics"]; People v James, 151 AD2d 606, 606-07 [2d Dept 1989] [drug factory presumption applied where there were "scales, two heat sealers, numerous empty vials and a large amount of cash"]).

The items the police found in this case -- six dime bags of crack cocaine and 50 unused empty ziplock baggies on the kitchen counter, and a razorblade and loose cocaine on the floor -- are insufficient to support the conclusion that the defendant was a participant in a drug sale enterprise because the items found may also be evidence of personal drug use. In fact, the apartment tenant and defendant's former companion testified at defendant's trial that the drugs were hers alone, she was hiding them from defendant, and, at the time the police entered, she was "indecisive" about what she would do with the drugs in the future, but that she would possibly consume some of the cocaine. This is not to say that a claim of personal use forecloses the People's reliance on the drug factory presumption, because where "probabilities based on experience and proof justify" the presumption, the presumption applies (Kims, 24 NY3d at 435).

However, this Court may not expand the reach of the drug factory presumption beyond its intended legislative purpose (see McKinney's Cons. Laws Of N.Y., Book 1, Statutes, § 94 ["A statute should not be extended by construction beyond its express terms or reasonable implications of its language"]).  To ensure proper adherence to the statutory goal, there should be a sufficient nexus between the legislatively identified problem and those persons subjected to the statutory presumption.  No such nexus exists on the facts presented here where the common indicia of a drug factory operation is lacking, and where the facts do not discount intended personal use of the drugs.  Thus, the People were required to carry their usual burden of establishing beyond a reasonable doubt that the defendant was in possession of the contraband.  They failed to do so and, therefore, the trial court should not have relied on the statutory presumption.

Defendant also presents a meritorious claim of ineffective assistance of counsel.  In my opinion the majority's rejection of this claim is based on a flawed analysis for two reasons.  First, the majority relies on an overly burdensome standard in assessing whether counsel was ineffective.  Under our state constitution a defendant must demonstrate that counsel failed to provide meaningful representation based on the totality of the representation (People v Baldi, 54 NY2d 137, 147 [1981]).  A defendant does not have to establish prejudice, as is required under the federal standard (see People v Caban, 5 NY3d 143, 155

[2005] ["Our state standard of meaningful representation, by contrast, does not require a defendant to fully satisfy the prejudice test of Strickland"]).  Therefore, the proper standard in deciding defendant's case is not whether he was prejudiced by the failure to testify before the grand jury, as the majority asserts (maj. opn. at 10), but rather did defense counsel's failure to facilitate defendant's intention to testify constitute less than meaningful representation.

The majority applies prior cases of this Court which impose a prejudice requirement on an ineffectiveness claim involving a defendant's right to testify before a grand jury (maj. opn. at 10-11).  However, there is no legal or practical basis to reject our well-established ineffectiveness standard for one class of deficient representation claims.  There is nothing insignificant about these claims that warrants differential, and more burdensome, treatment than any other ineffective assistance of counsel claim.  This Court has stated repeatedly that the right to testify before a grand jury is critical to the defendant.  Although not a constitutional right, we have explained that the defendant, via statute, still has the right "to appear at this critical accusatory stage to offer testimony that may affect the Grand Jury's consideration of the otherwise exclusive, ex parte presentment of evidence by the prosecution" (People v Evans, 79 NY2d 407, 413-414 [1992].  A defendant's ability to testify at a grand jury proceeding is that

individual's "singular incursion on the prosecutor's otherwise exclusive stronghold" (id., at 414).  Recently the Court has reaffirmed the significance of a defendant's opportunity to testify at grand jury proceedings and held that this right "must be scrupulously protected" (People v Brumfield, 24 NY3d 1126, 1128 [2015] quoting People v Smith, 87 NY2d 715, 721 [1996]).  Apparently, according to the majority such protection does not extend to one's own lawyer.

Given these considerations we should not follow cases that deviate from our constitutional standard.  Stare decisis is not meant to fit the Court like a straightjacket and to prevent mistakes from being rectified.  While "a court should be slow to overrule its precedents, there is little reason to avoid doing so when persuaded by the 'lessons of experience and the force of better reasoning'" (People v Bing, 76 NY2d 331, 338 [1990] quoting Burnet v Coronado Oil & Gas Co., 285 US 393, 407-408 [1932][Brandeis, J., dissenting]).  A defendant's grand jury claim should be subject to the same standard as other ineffective assistance of counsel claims, such as those based on a lawyer's failure to investigate and adequately prepare a defense (People v Oliveras, 21 NY3d 339, 348 [2013]), failure to object to prosecutorial misconduct and inflammatory summation remarks (People v Wright, 25 NY3d 769 [2015]), failure to assert a statute of limitations defense to a charge (People v Turner, 5 NY3d 476 [2005]), failure to consider proper criminal procedure

and evidentiary law (People v Oathout, 21 NY3d 127 [2013]), or failure to ensure that in counsel's absence defendant had adequate, and non-conflicted, representation (People v Allah, 80 NY2d 396 [1992])

The second reason that the majority's analysis fails is that, assuming, arguendo, a determination whether to have a defendant testify before the grand jury is a matter solely within the professional discretion of a defense attorney, here defendant's lawyer never discussed the matter with defendant. Thus, counsel could not have made an informed choice regarding this critical question. Indeed, counsel cannot define a strategy regarding whether a defendant should testify without reviewing the potential testimony with the client (cf. Oliveras, 21 NY3d at 348 ["This is not simply a case of a failed trial strategy. Rather, this is a case of a lawyer's failure to pursue the minimal investigation required under the circumstances."] [internal citations and quotations omitted]). Without such minimal effort defendant's counsel could not consider, or even know, the facts and risks associated with defendant's testimony, nor fully assess the advantages and disadvantages of whether it was in defendant's interest to appear before the grand jury. Under these circumstances counsel did not provide meaningful representation.

For the reasons stated above, I dissent.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

Order affirmed.  Opinion by Judge Stein.  Judges Pigott, Abdus-Salaam and Fahey concur.  Judge Rivera dissents in an opinion.  Chief Judge DiFiore and Judge Garcia took no part.

Decided February 18, 2016